**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **JASON PERRY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| **v.** | ) | **Civil Action No. 2:19-00188** |
| | ) | |
| **KAREN PSZCZOLKOWSKI, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court are the following: (1) Petitioner's "Application for Federal Intervention and Exhaustion of State Remedies to be Mandated Ineffective so Petitioner may Proceed by 28 U.S.C. § 2254" (Document Nos. 2 and 6); and (2) Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody (Document No. 8).[1] By Standing Order, this matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 4.)

**PROCEDURE AND FACTS**

**1.    Case No. 06-F-268:**

On June 15, 2006, the Grand Jury of Kanawha County, West Virginia, returned an Indictment against Petitioner charging him with seven counts of sexual abuse by a parent, guardian, or custodian in violation of West Virginia Code § 61-8D-5 (Counts 1, 4, 7, 9, 11, 13, and 15); three counts of first-degree sexual abuse in violation of West Virginia Code § 61-8B-7 (Counts

---

[1] Because Petitioner is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

2, 12, and 14); two counts of first-degree sexual assault in violation of West Virginia Code § 61-8B-3 (Counts 3 and 6); three counts of incest in violation of West Virginia Code § 61-8-12 (Counts 5, 8, and 10); and one count of third-degree sexual assault in violation of West Virginia Code 61-8B-5 (Count 16). State v. Perry, Criminal Action No. 06-F-268 (Cir. Ct. Kanawha Co. Sep. 25, 2008); (Document No. 15-1.) Following a jury trial, Petitioner was convicted on February 7, 2007 of all sixteen counts as charged in the Indictment. (Document No. 15-2.) By Amended Sentencing Order entered on May 21, 2007, the Circuit Court imposed a cumulative indeterminate term of imprisonment of not less than seventy (70) nor more than one hundred fifty (150) years in the penitentiary. (Document No. 15-3.) On January 28, 2008, Petitioner, by counsel, filed a Motion for Resentencing for purposes of restarting the appeal period. (Document No. 15-4.) In support, Petitioner's counsel stated that he had made diligent attempts to perfect Petitioner's appellate rights, but there had been a delay in providing necessary transcripts. (Id.) By Order entered on February 1, 2008, the Circuit Court granted Petitioner's Motion, resentenced Petitioner to the same sentence as set forth above, and thereby, reinstated Petitioner's appellate rights. (Document No. 15-5.)

On June 18, 2008, Petitioner, by counsel, W. Jesse Forbes, filed his Petition for Appeal with the Supreme Court of Appeals of West Virginia ("SCAWV"). (Document No. 15-6.) In his appeal, Petitioner asserted the following:

1.   The evidence at trial was insufficient to sustain the convictions, and the verdict rendered by the jury was contrary to the weight of the evidence.

2.   The sentences imposed by the trial court are excessive, disproportionate and constitute cruel and unusual punishment.

3.   The trial court erred in admitting a statement and/or confession of the appellant at trial over the appellant's Motion to Suppress the same as being

2

involuntarily made.

4.    The trial court erred by allowing Count Fifteen of the Indictment to be amended prior to trial without returning the Indictment to the Grand Jury as said count of the Indictment was facially deficient.

5.    Appellant was denied his constitutional right to effective assistance of counsel at trial and at sentencing in violation of the Sixth Amendment of the United States Constitution.

(Id.) By Order entered on September 25, 2008, the SCAWV refused Petitioner's appeal. (Document No. 15-7.)

**2.    State *Habeas* Petition:**

On March 17, 2009, Petitioner, acting *pro se*, filed his Petition for Writ of *Habeas Corpus* in the Circuit Court of Kanawha County. (Document Nos. 15-8 and 15-9.); Perry v. W.Va. D.O.C., Case No. 09-MISC-87 (Cir. Ct. Kanawha Co.). In his Petition, Petitioner asserted the following grounds for relief: (1) Ineffective Assistance of Counsel; (2) Coerced Confession; (3) Defects in Indictment; and (4) Excessive Sentence. (Document No. 15-9.) By Order entered on April 24, 2009, the Circuit Court summarily dismissed Petitioner's Petition. (Document No. 15-10.)

On July 14, 2009, Petitioner appealed the denial to the West Virginia Supreme Court of Appeals. (Document No. 15-11.) In his appeal, Petitioner argued as follows:

1.    The Circuit Court of Kanawha County abused its discretion and denied the Petitioner his constitutional right to due process by failing to appoint counsel and hold a hearing on his claims.

2.    The Circuit Court of Kanawha County denied Petitioner his right to due process and equal protection when the Court failed to give appellant a free transcript of his trial proceedings upon request.

(Id.) By Order entered on November 30, 2009, the SCAWV granted Petitioner's petition for appeal and remanded the action back to the Circuit Court for the appointment of counsel and an omnibus

3

*habeas corpus* hearing. (Document No. 15-12.)

By Order entered on March 17, 2010, the Circuit Court appointed Mr. Brendon Long as *habeas* counsel. (Document No. 15-13.) On May 21, 2012, Petitioner filed a Motion for Appointment of Co-Counsel. (Document No. 15-14.) In his Motion, Petitioner claimed that the appointment of co-counsel was necessary because of Mr. Long's alleged inexperience with *habeas* proceedings. In support, Petitioner stated, in pertinent part, as follows:

1.    It has been over 2 years since first meeting with Mr. Long in April 2010. To-date, nothing has been accomplished on the Habeas Corpus.

2.    Mr. Long came to see [Petitioner] in September 2011 and stated he would return in October 2011 with some drafted documents.

3.    Mr. Long cancelled the October meeting and rescheduled it for November 2011, however, he never came to see [Petitioner].

4.    Mr. Long contacted the [Petitioner's] family in December 2011, and stated he was busy with a juvenile case.

5.    Mr. Long did visit the [Petitioner] on February 28, 2012, which resulted in the exact conversation as discussed in September 2011. Again, he stated he was drafting documents and would return in three (3) weeks.

6.    [Petitioner] is still waiting on Grand Jury and pretrial hearing transcripts as well as expert witness information.

7.    To date, the [Petitioner] nor the [Petitioner's] family has seen or spoke to Mr. Long.

8.    Mr. Long [has neither] accept[ed] phone calls from the prison nor has he answered any correspondence from the [Petitioner].

(Id.) By Order filed on June 27, 2012, the Circuit Court relieved Mr. Long as counsel and appointed Shawna P. White as *habeas* counsel. (Document No. 15-15.)

On July 12, 2012, Petitioner sent a letter to Ms. White acknowledging he was aware that she had been appointed as his *habeas* counsel (Document No. 15-16.) Petitioner further informed

Ms. White that Mr. Long had been his previous *habeas* counsel and provided Mr. Long's contact

information. (Id.) Petitioner stated that he had "not spoken to [Mr. Long] in several months" and

he did not know whether Mr. Long had drafted anything on his *habeas* case. (Id.) On September

17, 2012, Petitioner again wrote Ms. White complaining that he had sent her two prior letters (July

and August 2012) and he had received "nothing to state that you received either letter from me or

if you are indeed my attorney." (Document No. 15-17.) Petitioner stated that in his opinion, their

relationship "has already started out badly." (Id.) Petitioner urged Ms. White to recuse herself if

she didn't "like" or could not handle his case. (Id.) On October 1, 2012, Petitioner sent Ms. White

a letter acknowledging that she had met with him on September 21, 2012. (Document No. 15-18.)

Petitioner further stated that he apologized "for the wording in the last letter, especially since you

did not receive my first two." (Id.) On January 29, 2013, Petitioner sent Ms. White a letter

complaining that he was unhappy with her and the lack of communication. (Document No. 15-19.)

On February 20, 2013, Petitioner filed a *pro se* "Motion for Appointment of New Counsel."

(Document No. 15-20.) In support, Petitioner complained of inadequate communication by Ms.

White. (Id.) On February 22, 2013, Ms. White filed a "Motion to Withdraw from Representation."

(Document No. 15-21.) In support, Ms. White stated, in pertinent part, as follows:

1.    On Monday February 11, 2013, counsel accepted a position with Cipriani
      & Werner, P.C. Counsel began working with this firm on February 15,
      2013. Counsel was not seeking other employment at the time, and the offer
      was unexpected.

2.    Due to the hours and resources which will be necessary in this new position,
      Counsel is unsure she will be able to spend the time and resources on the
      case which the client has expressed that he expects.

3.    If substitute counsel is appointed, a complete copy of Counsel's file as well
      as a memorandum on the status of the case will be provided to the newly
      appointed attorney.

(Id.) By Order filed on February 26, 2013, the Circuit Court relieved Ms. White as counsel and appointed Casey Forbes as *habeas* counsel for Petitioner. (Document No. 15-22.)

On March 29, 2013, Petitioner filed a *pro se* "Motion for Appointment of New Counsel." (Document No. 15-23.) In support, Petitioner claimed that Casey Forbes would have a conflict of interest because Petitioner intended to assert a claim of ineffective assistance of appellate counsel against Jesse Forbes. (Id.) Petitioner further stated that John M. Jurco of St. Clairville, Ohio, was willing to represent Petitioner "if appointed." (Id.) Therefore, Petitioner requested that Casey Forbes be removed as counsel and Mr. Jurco be appointed as counsel. (Id.) On June 10, 2013, Petitioner sent a letter to the Clerk inquiring as to the status of the "Motion for Appointment of New Counsel." (Document No. 15-24.) By Order entered on June 11, 2013, the Circuit Court relieved Mr. Forbes from representing Petitioner and appointed Clinton W. Smith as *habeas* counsel for Petitioner. (Document No. 15-25.)

On October 28, 2013, Petitioner filed a *pro se* Motion for Appointment of New Counsel. (Document No. 15-26.) In support, Petitioner complained that Mr. Smith was acting ineffectively by failing to adequately communicate with Petitioner. (Id.) On January 28, 2014, Petitioner filed another *pro se* Motion for Appointment of Counsel requesting that Mr. Smith be relieved as counsel do to his lack of communication with Petitioner. (Document No. 15-27.) By Order entered *nunc pro tunc* March 24, 2014, the Circuit Court relieved Mr. Smith from representing Petitioner and appointed Brendan Doneghy as *habeas* counsel for Petitioner. (Document No. 15-28.)

On March 16, 2017, Petitioner filed a letter with the Clerk requesting that Mr. Doneghy be replaced or for co-counsel to be appointed. (Document No. 15-29.) Petitioner stated that he believed Mr. Doneghy was "in over his head" and Petitioner needed "someone this time with

experience in criminal law and post-conviction work." (Id.) By Order filed on April 13, 2017, the Circuit Court relieved Mr. Doneghy from representing Petitioner and appointed Timothy Rosinsky as *habeas* counsel for Petitioner. (Document No. 15-30.)

On March 30, 2018, Petitioner filed his letter-form Motion for Appointment of New Counsel. (Document No. 15-31.) Petitioner complained that Mr. Rosinsky had only called him once and never met with him. (Id.) Petitioner further stated that the "one time we did speak, we are in disagreement on the path to take" and "I know from our 'brief' talk that we will not be able to work together." (Id.) On April 9, 2018, Petitioner filed another Motion for New Counsel. (Document No. 15-32.) Specifically, Petitioner requested that the Court do the following: (1) Appoint new counsel; (2) "Appoint someone with criminal law, and if possible, post-conviction experience;" and (3) "Set new counsel a deadline of 3 to 6 months" to file Petitioner's Amended *habeas* petition. (Id.) On May 24, 2018, the Circuit Court conducted a hearing on Petitioner's Motion for New Counsel. (Document No. 15-33.) The Circuit Court initially indicated that it was going to deny Petitioner's Motion because Mr. Rosinsky was Petitioner's sixth lawyer and the Court had paid "thousands and thousands of dollars to lawyers that you've had in the past." (Id., p. 2.) Mr. Rosinsky represented to the Court that he had been working on Petitioner's case, had sent Petitioner 19 letters, talked with Petitioner on the phone, and talked to Petitioner's family members. (Id., pp. 2 – 3.) Mr. Rosinsky explained that Petitioner's case involved "four banker boxes." (Id., p. 3.) Mr. Rosinsky further explained that about a year prior, he had requested *habeas* work from several circuit courts and he had been appointed as counsel on approximately 50 *habeas* cases across the State. (Id.) Mr. Rosinsky acknowledged he was overwhelmed with the amount of *habeas* cases and understood Petitioner's frustration and desire for new counsel. (Id.) Although

Mr. Rosinsky did not specifically request to be relieved from the case, Mr. Rosinsky stated that he could "sure use the lighten load" if Petitioner did not "want" him. (Id., p. 6.) The Circuit Court, therefore, relieved Mr. Rosinsky as counsel and stated that new counsel would be appointed. (Id., pp. 6 – 7.) Petitioner further requested that the Court set forth a deadline for new counsel to file Petitioner's amended *habeas* petition, and the Circuit Court Judge responded that "I'll take care of it." (Id., p. 7.) By Order filed on June 4, 2018, the Circuit Court relieved Mr. Rosinsky from representing Petitioner and appointed Edward Bullman as *habeas* counsel for Petitioner. (Document No. 15-34.)

On January 18, 2019, Petitioner filed a "Motion for Relief" with the SCAWV. (Document No. 2-2, pp. 2 - 7.) Specifically, Petitioner requested that the SCAWV "intervene and grant my release from D.O.C. custody or to take jurisdiction and grant me a new trial and/or set a bond so I can go home until new trial/negotiation with the State." (Id.) By letter dated January 22, 2019, a Deputy Clerk for the Office of the Clerk for the SCAWV notified Petitioner as follows:

> The Supreme Court of Appeal of West Virginia is the appellate court of last resort in the State of West Virginia. Its jurisdiction is specifically circumstanced by West Virginia constitutional and statutory provisions. The Court cannot intervene in any case that is not jurisdictionally before it pursuant to these provisions. It appears that you are seeking for this Court to intervene in a matter currently pending in Kanawha County Circuit Court. Please be advised that this Court does not have jurisdiction to intervene in a matter pending in circuit court. Therefore, no further action will be taken at this time.

(Id., p. 1.)

On January 8, 2020, the Circuit Court conducted a Status Hearing. (Document Nos. 37, 39, and 40.) Petitioner and Mr. Bullman indicated there was a disagreement as to what grounds should be asserted in Petitioner's Amended Petition. (Id.) Therefore, the Circuit Court ordered Mr. Bullman to again confer with Petitioner and to file an Amended Petition within 60 days. (Id.) After

Petitioner expressed doubts that the Amended Petition would include all the grounds Petitioner wished to assert, the State agreed to allow Petitioner to file a *pro se* Brief simultaneously with the Amended Petition filed by counsel. (<u>Id.</u>) The Circuit Court directed that the State would have 60 days to respond to the Amended Complaint and Petitioner's *pro se* Brief. (<u>Id.</u>)

**3.      Section 2254 Petition:**

On March 15, 2019, Petitioner, acting *pro se*, filed his "Application for Federal Intervention and Exhaustion of State Remedies to be Mandated Ineffective so Petitioner may Proceed by 28 U.S.C. § 2254." (Document No. 2.) In his "Application for Federal Intervention and Exhaustion of State Remedies to be Mandated Ineffective so Petitioner may Proceed by 28 U.S.C. § 2254," Petitioner solely focused upon his argument that the exhaustion requirement should be waived due to the inordinate delay of state court proceedings. (Document No. 2.) Petitioner, however, failed to set forth any grounds for *habeas* relief. (<u>Id.</u>) By Order entered on March 19, 2019, the undersigned directed Petitioner to file his Section 2254 Petition specifically setting forth his grounds for *habeas* relief. (Document No. 5.) On March 22, 2019, Petitioner filed an additional copy of his "Application for Federal Intervention and Exhaustion of State Remedies to be Mandated Ineffective so Petitioner may Proceed by 28 U.S.C. § 2254" with supporting Exhibits. (Document No. 6.)

On March 27, 2019, Petitioner filed his Section 2254 Petition. (Document No. 8.) In his Petition, Petitioner alleges the following grounds for *habeas* relief:

1.      Ineffective Assistance of Counsel:
        Lawyers did not go over plea, did not want nor prepare me to testify, did not call any of the expert witnesses we needed, except a few phone calls. They did no investigation, released all my witnesses but one without my knowledge or consent. They did not introduce vital information at trial: documents, phone calls, jail visits, letters, statistics, medical record, etc.

They did not cross examine an alleged victim even after [the victim] had trouble identifying me among many other things.

2.     Coerced Confession:
Police Lt. lied to me and my mother, changed his story from pretrial to trial. I told him I was drinking before coming to the station. He wouldn't let me leave. He admitted in court he couldn't remember if he read me my Miranda rights before taping the statement. He said if I did not work with him, someone else would arrest me and I would go to jail for hundreds of years! I was very afraid and did what he told me.

3.     Defects in Indictment:
Count 15 was facially deficient, confusing and should have been sent back to the Grand Jury. It was not a typo. It listed 2 totally different names and it violates my rights. How can we know what name the Grand Jury wanted when we never saw the Grand Jury Minutes. I don't know the law. I believe counsel could help with this and trial counsel should have done something about it.

4.     Excessive Sentence:
I got a big sentence by a Judge who did not like me or my mother (they had personal problems since high school – I filed a Judicial Investigation before my trial). Others had less sentences and less bonds. Trial counsel should have investigated and asked for a new judge/change of venue. An experienced lawyer can help me perfect this after going through transcripts, notes, Losh List, interview, investigation, etc.

(Id.) As Exhibits, Petitioner attached the following: (1) A copy of his *pro se* Petition for Appeal concerning the denial of his State *habeas* petition as filed with the SCAWV (Document No. 8-1, pp. 1 – 17.); (2) A copy of Petitioner's *pro se habeas* Petition as filed with the Circuit Court (Id., pp. 18 – 23.); (3) A copy of the Case Reassignment Form as filed in the Circuit Court on April 8, 2009 (Id., p. 24.); (4) A copy of Petitioner's Motion for Records and Transcripts as filed in the Circuit Court (Id., pp. 25 – 26.); (5) A copy of a letter to Petitioner from his children (Id., pp. 27 – 34.); (6) A copy of Petitioner's Docketing Statement as filed with the SCAWV (Id., pp. 34 – 37.); and (7) A copy of the Docket Sheet from Perry v. W.Va. D.O.C., Case No. 09-MISC-87 (Cir. Ct. Kanawha Co.) (Document No. 8-2.). As relief, Petitioner requests this Court: (1) "Remand back

10

to the lower court with appointment of counsel, and a set timeline and/or new trial, with a bond set;" or (2) "Due to delay and lack of a possible fair trial at this time (death, loss of evidence, etc.), set aside the conviction and release [Petitioner] from W. Va. D.O.C. custody." (Document No. 8.) On April 3, 2019, Petitioner filed a Supplement requesting this Court require the Circuit Court to pay Petitioner $1,000 "for every year of delay of the *habeas* hearing or an amount this Honorable Court deems fit." (Document No. 11.)

By Order entered on April 3, 2019, the undersigned ordered Respondent to file a Response to Petitioner's "Application for Federal Intervention and Exhaustion of State Remedies to be Mandated Ineffective so Petitioner May Proceed by 28 U.S.C. § 2254" (Document Nos. 2 and 6). (Document No. 10.) On May 28, 2019, Respondent filed her "Response in Opposition to Petitioner's Application for Federal Intervention." (Document No. 15.) Respondent first argues that it is evident from the record, and Petitioner acknowledges, that he has not fully exhausted his state remedies as to all federal *habeas* claims. (Id., pp. 6 – 9.) Respondent further argues that Petitioner has not demonstrated that his case presents the "high exceptional circumstances" justifying deviation from Section 2254(b)(1)'s exhaustion requirements. (Id.) Respondent acknowledges when determining if a delay is inordinate enough to warrant excusal of the exhaustion requirement, this Court applies a three-factor test considering the following: (1) the length of the delay; (2) the significance of any action that has been taken in state court; and (3) the party responsible for the complained-of delay. (Id., p. 9.) In considering the first factor, Respondent "concedes that the length of time Petitioner's state *habeas* petition has been pending since its remand on November 30, 2009" weighs in favor of Petitioner. (Id., p. 10.) In considering the second factor, Respondent argues that such "cannot be said to weigh decisively in favor of

11

excusing exhaustion." (Id., pp. 11 – 12.) Respondent explains that "while none of Petitioner's attorneys have filed an amended petition and the Circuit Court has not yet held an evidentiary hearing, the Circuit Court has repeatedly appointed him new counsel upon his expression of dissatisfaction with his current attorney." (Id.) Respondent notes that Petitioner has been appointed six different attorneys." (Id.) Respondent concludes that "the case has not lain fallow and unattended on the state court's docket" because the "Circuit Court has made repeated efforts to provide Petitioner with satisfactory representation to bring his case to resolution." (Id.) In considering the third factor, Respondent argues that such does not weigh in favor of excusing exhaustion. (Id., pp. 12 – 14.) Respondent acknowledges that some of the delay can be attributed to the Circuit Court for failing to enter a Scheduling Order and court-appointed counsel. (Id.) Respondent, however, argues that "a significant proportion of the delay of which Petitioner complains must be attributed to Petitioner's repeated requests for new counsel." (Id., p. 13.) Therefore, Respondent concludes that Petitioner should not be excused from exhausting this state remedies and the Court should deny Petitioner's "Application for Federal Intervention and Exhaustion of State Remedies to be Mandated Ineffective so Petitioner May Proceed by 28 U.S.C. § 2254." (Id.)

On May 29, 2019, the Court issued an "Order and Notice" pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) advising Petitioner of his right to file a reply to Respondent's Response requesting dismissal. (Document No. 16.) On June 27, 2019, Petitioner filed his Reply. (Document No. 25.) First, Petitioner argues that the "delay in his State *habeas* proceedings are beyond the magnitude of delay that has been determined to be inordinate and a violation of due process." (Id., p. 4.) Petitioner disputes that he is responsible for any of the delays.

(Id., p. 5.) Petitioner argues that "all of the delays were attributed by court appointed counsel failing and refusing to motion the Circuit Court for a strict scheduling order to be issued, each of these lawyers were replaced, and lastly Attorney Rosinsky was so overwhelmed with his court appointed case load, he conceded and admitted he could not effectively represent the petitioner in the habeas proceedings." (Id.) Petitioner asserts that "the delays caused by court appointed counsel are attributable to the State, as the Petitioner has not personally caused the delays, nor has he condoned them, and Petitioner has in fact approached the Circuit Court pro-se addressing the issue of the Circuit Court's failure to issue a strict scheduling order." (Id., p. 6.) Petitioner concludes that the State *habeas* process is "so clearly deficient as to render futile any effort by the Petitioner to obtain relief." (Id., p. 7.) As Exhibits, Petitioner attaches a copy of a letter Petitioner sent to Attorney Bullman (State *habeas* counsel) dated June 10, 2019. (Document No. 25-1.)

By Order entered on December 13, 2019, the undersigned directed the Respondent to "file a copy of an updated Docket Sheet regarding Petitioner's State *habeas* action (Case No. 09-MISC-87). (Document No. 34.) On December 23, 2019, Respondent filed her "Response to Court's Order" notifying this Court that a Status Hearing was scheduled to occur in Petitioner's State *habeas* action on January 8, 2020.[2] (Document No. 35.) By Order entered on January 6, 2020, the Court directed Respondent to provide the Court with a summary of Petitioner's State *habeas* Status Hearing. (Document No. 36.)

---

[2] Respondent further complied with the Court's Order to provide an updated copy of the Docket Sheet for Case No. 09-MISC-87. The Court notes that although a Status Hearing was scheduled for January 8, 2020, the Docket Sheet was void of any order or notation of such. (Document No. 35-1.) The foregoing is somewhat concerning for purposes of Petitioner's Federal *habeas* action because hearings, such as the foregoing Status Conference, are relevant to the claim of inordinate delay. The lack of a record of such hearings gives the appearance of inaction in the State court.

On January 13, 2020, Petitioner filed a "Letter Response to Petitioner's State Habeas Status Hearing." (Document No. 37.) Petitioner acknowledges that he went to a Status Hearing on January 8, 2020, concerning his State *habeas* proceedings. (Id., p. 1.) Petitioner acknowledges that the State judge and prosecutor were "very nice," but complains that his appointed counsel "had a bad attitude." (Id., pp. 2 – 3.) Petitioner states that "if I understood what was going on, I take it [Attorney Bullman] is going to do what he wants & any issues I have, I have to bring up myself." (Id., p. 3.) Petitioner contends that he does not believe Attorney Bullman "has a lot, if any, post-conviction work experience." (Id.) Petitioner states that he does not think Mr. Bullman "has a clue how to proceed." (Id.) As an example, Petitioner states as follows: "Months after Mr. Bullman stated he reviewed my case, I had to argue with him because he didn't want to raise issues from direct appeal. I had to tell him they [were] not adjudicated! (Really?)."[3] (Id.) Finally, Petitioner alleges that Mr. Bullman does not "know about expert witnesses." (Id.) Petitioner appears to argue that Attorney Bullman will not work with him to "call my expert witnesses" to testify at the omnibus hearing. (Id.) Petitioner states that if "I had money to hire my own counsel . . . I would not have hired Mr. Bullman to start with, and if my family had hired him, I would have fired him." (Id.) Petitioner argues that "as long as I am not asking for something unethical, I should get my issues raised." (Id.) Petitioner states that he is "afraid to represent [himself]," and "Mr. Bullman is not going to raise my issues." (Id.) Petitioner indicates that Attorney Bullman does not "understand the law and issues at hand." (Id.) Finally, Petitioner states that he believes the above status

---

[3] It is unclear what Petitioner means by "adjudicated." To the extent Petitioner is claiming he has the right to reassert in his State habeas petition the exact same issues as asserted in his direct appeal, the undersigned notes that such would be precluded by res judicata. *See Butler v. Plumely*, 2016 WL 6819044 (W.Va. Nov. 18, 2016); *Heavener v. Pszczokowski*, 2016 WL 5210797 (W.Va. Sep. 19, 2016).

conference was "for show." (Id.) Petitioner complains that he is "unable to trust the lower court and its agents." (Id., p. 1.)

On January 17, 2020, Respondent filed her "Response to Court's January 2020 Order." (Document No. 39.) First, Respondent notes that Attorney Bullman "indicated that he had made several attempts to contact Petitioner by letter, but that Petitioner was largely unresponsive." (Id., p. 1.) Respondent notes that in response, "Petitioner stated that he had been advised by fellow inmates on the 'legal team' that since the West Virginia Office of the Attorney General is now involved, he should no longer respond to his state-appointed counsel nor the Kanawha County Office of the Prosecuting Attorney." (Id.) Respondent states that Petitioner was then advised that the "Attorney General only represents the Warden in the federal court action, and that his counsel still represents him in state court." (Id.) Second, Respondent states that Petitioner inquired regarding the delay in his *habeas* proceedings. (Id.) In Response, Attorney Bullman "detailed the work completed on the *habeas* matter, including review of the voluminous file, preparation of the Losh list, and preparation of an Amended Petition." (Id., p. 2.) Attorney Bullman indicated that Petitioner had signed the Losh list, but Petitioner had not approved the Amended Petition for filing despite having the Amended Petition for more than six months. (Id.) Respondent notes that the "Assistant Prosecuting Attorney noted for the record that Petitioner has now had seven *habeas* attorneys, and the two most recent, prior to his current counsel, each did significant work on Petitioner case as reflected by the fee vouchers submitted and approved by the circuit court."[4] (Id.) Finally, Respondent acknowledges that "Petitioner requested a scheduling order, and the circuit

---

[4]  A review of the State Court Docket Sheet reveals that the Circuit Court has paid nearly $7,000 in attorney fees concerning Petitioner's State *habeas* action. (Document No. 15-8.)

court ordered Petitioner's counsel to again confer with Petitioner and to file an Amended Petition within 60 days." (Id.) Respondent notes that Petitioner "expressed doubts that the petition would include every allegation Petitioner wishes to raise, and the State agreed to allow a *pro se* brief to be filed simultaneously with the Amended Petition filed by counsel." (Id.) Respondent states that the Circuit Court directed that the State will then have 60 days to respond to the Amended Complaint. (Id.)

On January 24, 2020, Petitioner filed his Reply. (Document No. 40.) First, Petitioner contends that Attorney Bullman "has sent mail twice since I filed the case in the District Court." (Id., p. 1.) Petitioner further states he has not had the Amended *Habeas* Petition for "over 6 months like Ms. Proper stated." (Id.) Petitioner, however, acknowledges that he received a copy of the Amended *Habeas* Petition on August 29th.[5] (Id.) Second, Petitioner appears to state that he was correct following the "recommendation of an inmate Legal-Aide, that since [he] filed [his] case in the U.S. District Court, and awaiting an answer, [Petitioner] should refrain from contact except with the W. Va. Attorney General's Office." (Id., p. 2.) Third, Petitioner states that the Assistant Prosecuting Attorney was the person who brought up the issue of delay concerning the State *habeas* proceedings. (Id.) Fourth, Petitioner complains Attorney Bullman doesn't "know or understand the issues on my case." (Id.) Petitioner then states that "rewriting my original habeas, without client consultation and adding the important issues, is not an Amended Petition." (Id.) Fifth, Petitioner contends he is not at fault for the delays. (Id., p. 3.) Finally, Petitioner appears to acknowledge that the Circuit Court set forth a scheduling order. (Id.) Petitioner, however, complains that although Attorney Bullman "stated he would come to the prison to go back over

---

[5]  Thus, Petitioner acknowledges he had a copy of the Amended Habeas Petition for five months.

the Losh List," he stated "he was done with the habeas and [Petitioner] can raise [his] own issues." (<u>Id.</u>, p. 4.) Petitioner states as follows: I am not a lawyer . . . Why even have a lawyer? This is insane!" (<u>Id.</u>)

## THE APPLICABLE STANDARD

In Section 2254 proceedings, the familiar standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure apply to motions to dismiss. <u>See</u> <u>Walker v. True</u>, 399 F.3d 315, 319, n. 1. (4th Cir. 2005); <u>also see</u> Rules Governing Section 2254 Cases in the United States District Courts, Rule 12 (The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with the *habeas* rules, may be applied to Section 2254 proceedings). A motion to dismiss a Section 2254 petition under Rule 12(b)(6) "tests the legal sufficiency of the petition, requiring the federal habeas court to 'assume all facts pleaded by the § 2254 petitioner to be true." <u>Walker v. Kelly</u>, , 139 (4th Cir. 2009)(<u>citing</u> <u>Wolfe v. Johnson</u>, 565 F.3d 140, 169 (4th Cir. 2009). The court, however, is "not obliged to accept allegations that 'represent unwarranted inferences, unreasonable conclusions, or arguments,' or that 'contradict matters properly subject to judicial notice or by exhibit.'" <u>Massey v. Ojaniit</u>, 759 F.3d 343, 353 (4th Cir. 2014)(<u>quoting</u> <u>Blankenship v. Manchin</u>, 471 F.3d 523, 529 (4th Cir. 2006). When assessing whether the Section 2254 petition states a claim for relief, the court must consider "the face of the petition any attached exhibits." <u>Wolfe</u>, 565 F.3d at 169 (internal quotations omitted). The court may also consider such exhibits and matters of public record, such as documents from prior state court proceedings, in conjunction with a Rule 12(b)(6) motion without having to convert the motion to one for summary judgment. <u>Walker</u>, 589 F.3d at 139.

## ANALYSIS

**1.    Failure to Exhaust:**

In her Response requesting dismissal, Respondent argues that Petitioner's Petition contains unexhausted claims and Petitioner should not be excused from the exhaustion requirement. (Document No. 15.) Respondent states that it is evident that Petitioner's Section 2254 Petition "advances grounds that have not been 'fairly presented' to West Virginia's highest court – the SCAWV – including, for example, his assertion that his trial counsel were ineffective in failing to go over a plea with him (EFC No. 8 at 5) – a claim separate and distinct from the ineffective assistance of counsel claim presented in the 2008 petition for appeal (concerning counsel's alleged deficiencies at trial)." (Id., pp. 8 - 9.) In Response, Petitioner acknowledges that his claims are unexhausted. (Document No. 25.) Petitioner, however, contends that he should be excused from the exhaustion requirement based upon the inordinate delay of his State *habeas* proceeding. (Id.)

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 [AEDPA], effective April 24, 1996, provides that state prisoners must exhaust available state remedies prior to filing a § 2254 petition in federal court. 28 U.S.C. § 2254(b)(1)(A); see also, McDaniel v. Holland, 631 F.Supp. 1544, 1545 (S.D. W.Va. 1986)("A federal court will not entertain a state prisoner's petition for a writ of habeas corpus unless the prisoner has first exhausted available state judicial remedies."). Section 2254(b)(1)'s exhaustion requirement can be satisfied in either one of two ways: (1) the Petitioner can fairly present all claims in state court, or (2) the Petitioner's claims will be deemed exhausted if no state remedies are currently available. See Gray v. Netherland, 518 U.S. 152, 161, 116 S.Ct. 2074, 2080, 135 L.Ed.2d 457 (1996). Fair presentation requires the Petitioner to (1) present the same claims (2) to all appropriate state courts.

18

See Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997), *abrogated on other grounds*, United States v. Barnette, 644 F.3d 192 (4th Cir. 2011). Presentation of the same claim "contemplates that 'both the operative facts and the 'controlling legal principles' 'must be presented to the state court." Id. (quoting Verdin v. O'Leary, 972 F.2d 1467, 1474 (7th Cir. 1992) (quoting Picard v. Connor, 404 U.S. 270, 277, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971)). Although it is unnecessary to cite "book and verse on the federal constitution," "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." See Picard, 404 U.S. at 278, 92 S.Ct. at 514; Anderson v. Harless, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982)(internal citations omitted); Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000). The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." Matthews, supra, 105 F.3d at 911. "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan v. Henry, 513 U.S. 364, 365-66, 115 S.Ct. 887, 886, 130 L.Ed.2d 865 (1995); see also Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 1351, 158 L.Ed.2d 64 (2004)(stating that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal'"). Petitioner must also provide the state court with the facts supporting the claimed constitutional violation and "explain how those alleged

events establish a violation of his constitutional rights." Mallory v. Smith, 27 F.3d 991, 994 (4th Cir. 1994). The requirement of presentation of the same claim to all appropriate state courts is designed to give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999). This requirement is satisfied by presentation to the state's highest court on either direct or collateral review. Id. at 844, 119 S.Ct. at 1732. In West Virginia, prisoners may exhaust their available State court remedies by the following: (1) stating cognizable federal constitutional claims in a direct appeal to the West Virginia Supreme Court of Appeals; (2) stating cognizable federal constitutional claims in a petition for a writ of *habeas corpus* in a State circuit court pursuant to West Virginia Code § 53-4A-1, followed by filing a petition for appeal from an adverse ruling to the West Virginia Supreme Court of Appeals; or (3) filing a petition for writ of *habeas* corpus under the West Virginia Supreme Court's original jurisdiction and receiving a dismissal with prejudice.[6] Moore v. Kirby, 879 F.Supp. 592, 593 (S.D.W.Va. 1995); McDaniel v. Holland, 631 F.Supp. 1544, 1545-46 (S.D.W.Va. 1986).

Generally, a federal district court may not review a Section 2254 petition unless there has been "total exhaustion" of the presented issues. Rose v. Lundy, 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); also see Preiser v. Rodriguez, 411 U.S. 475, 477, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)(When a petitioner fails to exhaust his state court remedies, a federal *habeas* petition

---

[6] An original jurisdiction petition that is denied without an indication that the denial is with prejudice following a determination on the merits will not exhaust the petitioner's state court remedies. *See Moore*, 879 F.Supp. at 593; *McDaniel*, 631 F.Supp. at 1546; *see also, Meadows v. Legursky*, 904 F.2d 903, 908-09 (4th Cir. 1990)(*abrogated on other grounds, Trest v. Cain*, 522 U.S. 87, 118 S.Ct. 478, 139 L.Ed.2d 444 (1997)).

should be dismissed.) When a petitioner presents a mixed petition under § 2254, that is a petition containing claims that are both exhausted and unexhausted, the District Court may (1) dismiss the petition in its entirety; (2) order a stay and abeyance while the petitioner exhausts his claims in State Court; or (3) allow the petitioner to remove the unexhausted claims and proceed with the exhausted claims. Rhines v. Weber, 544 U.S. 269, 275-77, 125 S.Ct. 1528, 161 L.E.2d 440 (2005). "[N]otwithstanding the failure of an applicant to exhaust the remedies available in the courts of the state," a district court may deny the unexhausted claims on the merits. 28 U.S.C. § 2254(b)(2); also see White v. Keller, 2013 WL 791008, * 5 (M.D.N.C. March 4, 2013). To be excused from the exhaustion requirement, Petitioner must establish that "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B). The foregoing statutory exceptions apply "only if there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." Duckworth v. Serrano, 454 U.S. 1, 3, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981); also see Farmer v. Circuit Court of Md. for Balt. City., 31 F.3d 219, 223 (4th Cir. 1994)("There is . . . authority for treating sufficiently diligent, though unavailing, efforts to exhaust as, effectively, exhaustion, and for excusing efforts sufficiently shown to be futile in the face of state dilatoriness or recalcitrance."). A finding of futility sufficient to excuse exhaustion may be found where either something in the record of the petitioner's case clearly indicates that the state court where petitioner otherwise could seek relief will not consider the petitioner's claim, or the law of the state clearly precludes any further review of the petitioner's claim. Knight v. State of West Virginia, 981 F.2d 1251 (4th Cir. 1992)("[W]hen it is clear that the state court will refuse to entertain a habeas petitioner's claim, the prisoner need not exhaust his

state remedies, because the prisoner is not required to exhaust a claim when seek relief in the state courts would clearly be futile.")(citing Teague v. Lane, 489 U.S. 288 (1989)). Additionally, "[s]tate remedies may be rendered ineffective by inordinate delay or inaction in state proceedings." Ward v. Freeman, 46 F.3d 1129 (4th Cir. 1995)(unpublished table decision).

A review of record reveals that Ground One of Petitioner's Section 2254 Petition is unexhausted. In Ground One of Petitioner's Section 2254 Petition, Petitioner alleges that trial counsel was ineffective based on the following:

> Lawyers did not go over plea, did not want nor prepare me to testify, did not call any of the expert witnesses we needed, except a few phone calls. They did no investigation, released all my witnesses but one without my knowledge or consent. They did not introduce vital information at trial: documents, phone calls, jail visits, letters, statistics, medical record, etc. They did not cross examine an alleged victim even after [the victim] had trouble identifying me among many other things.

(Document No. 8.) In his direct appeal, Petitioner alleged that trial counsel was ineffective based upon the following:

1. Trial counsel conducted no cross-examination at all of one of the victims, B, despite her having difficulty in identifying the Defendant/Appellant, herein, and numerous differences between her testimony and that of K regarding the one and only time B was allegedly subjected to a sexual encounter with Mr. Perry.

2. Trial counsel for the Appellant only called one witness in his defense, a Mr. James Ray Foster, the general manager of Billo Shops, Inc., which owns the Billo's convenience store, in Belle, West Virginia, where the alleged incident involving Mr. Perry purchasing Smirnoff Ice for K and B occurred.

3. [T]rial counsel failed to call Tracy Perry as a witness in her husband's defense.

4. Trial counsel was also ineffective in proving that the Appellant's confession was involuntary, as the Appellant's mother was present with Lt. Crosier made promises of leniency to the Appellant, and she was present during part of his interrogation, and yet trial counsel failed to call the Appellant's mother in his defense.

5.   Trial counsel's theory of defense was that the allegations were fabricated by Kelly Ford and K, however, trial counsel only asked Kelly Ford three questions on cross-examination, despite the fact that her testimony differed from K's regarding her dislike of Mr. Perry.

6.   The Appellant further submits that trial counsel was ineffective in cross-examining H by failing to introduce the sworn notarized statement that she gave to Gail Michaelson in the Public Defender's office.

7.   Appellant submits that trial counsel was ineffective in failing to move to admit several letters that H had written to him while he was incarcerated on the instant offense, as said letters were in possession of trial counsel prior to trial, and said letters indicated Mr. Perry's innocence, and contradicted H's testimony at trial.

8.   Appellant submits that he wanted to testify on his own behalf, but his trial counsel advised him not to testify, despite the damaging evidence of his involuntary statement to Lt. Crosier, which was erroneously admitted.

(Document No. 15-6, pp. 37 - 44.) Although Petitioner has filed a State *habeas* petition, Petitioner's State *habeas* proceedings are not yet completed. Thus, the record reveals that the following claims of ineffective assistance of counsel are unexhausted: (1) Trial counsel "did not go over plea;" (2) Trial counsel "did not call any of the expert witnesses we needed;" and (3) Trial counsel did not introduce "documents," phone calls, jail visits, statistics, and medical records. Thus, Petitioner's Section 2254 Petition is a mixed Petition containing both exhausted and unexhausted claims. The undersigned, therefore, will consider Petitioner's claim that he should be excused from the exhaustion requirement based upon inordinate delay.

**2.   Inordinate Delay:**

As stated above, in extreme cases, state remedies "may be rendered ineffective by inordinate delay or inaction in state proceedings" so that exhaustion of those remedies is excused. Ward, 46 F.3d at 1129. When determining whether the alleged delay is inordinate such that

23

exhaustion should be excused, courts should consider the following factors: (1) "the length of delay;" (2) "the significance of any action that has been taken in state court;" and (3) "the party responsible for the complained-of delay." Plymail v. Mirandy, 2017 WL 4280676, * 7 (S.D.W.Va. Sep. 27, 2017)(J. Chambers)(citations omitted). "If an inordinate delay is found, the burden shifts to the State to provide justification for the delay and to demonstrate why the petitioner should still be required to exhaust his state court remedies before seeking relief in federal court. Id. (citing Story v. Kindt, 26 F.3d 402, 405 (3rd Cir. 1994)).

### A.    Length of Delay:

First, the undersigned will consider the length of delay. Generally, courts find an inordinate delay only when long periods of time have passed. See Brennan v. McGraw, 2012 WL 3656487 (S.D.W.Va. Aug. 24, 2012)(J. Goodwin)(citations omitted)("[D]elay only rises to the level of 'inordinate' in extreme cases."); also see Turner v. Bagley, 401 F.3d 718, 726-27 (6th Cir. 2004)(excusing exhaustion where the petitioner's state direct appeal had been pending for 11 years); Lee v. Stickman, 357 F.3d 338, 341-42 (3rd Cir. 2004)(holding that an 8-year delay in reaching the merits of a post-conviction petition constitute inordinate delay); Mathis v. Hood, 851 F.2d 612, 614 (2nd Cir. 1988)(finding a 6-year delay of direct appeal constitutes inordinate delay); Gardner v. Plumley, 2013 WL 5999041 (S.D.W.Va. Nov. 12, 2013)(J. Goodwin)(finding inordinate delay where petitioner's state proceedings were pending for nearly 20 years without a decision from the state court). Thus, courts generally reject claims of inordinate delay when there are only brief periods of delay. Also see Miller v. McFadden, 2015 WL 846530 (D.S.C. Feb. 26, 2015)(finding no inordinate delay where the time between when the petition was filed and when the Circuit Court issued its Order of Dismissal was approximately 24 months); Cobarruvias v.

Cartledge, 2012 WL 6772231, * 2 (D.S.C. Nov. 2012)(finding that 22 months does not qualify as inordinate delay); Short v. Hoke, 2010 WL 2509633 (S.D.W.Va. June 18, 2010)(J. Faber)(finding no inordinate delay based upon petitioner's State petition pending in the circuit court for little more than a year); Walkup v. Haines, 2005 WL 2428163 (S.D.W.Va. Sept. 30, 2005)(J. Faber)(finding a 3 year delay not to be inordinate delay); Cook v. Florida Parole and Probation Commission, 749 F.2d 678 (11th Cir. 1985)(finding a three and half year delay in ruling on petitioner's *habeas* petition to be insufficient to justify excusing the exhaustion requirement); and Booker v. Kelly, 636 F.Supp. 319 (W.D.N.Y. 1986)(finding no complete absence of state corrective procedure based upon a three year delay of petitioner's appeal caused by ineffective assistance of counsel).

In the instant case, the undisputed record reveals Petitioner filed his *pro se* State *habeas* Petition on March 17, 2009. (Document Nos. 15-8 and 15-9.) Approximately five weeks later, on April 24, 2009, the Circuit Court summarily denied Petitioner's Petition. (Document No. 15-10.) On July 14, 2009, Petitioner appealed the denial to the SCAWV. (Document No. 15-11.) By Order entered on November 30, 2009, the SCAWV granted Petitioner's petition for appeal and remanded the action back to the Circuit Court for the appointment of counsel and an omnibus hearing. (Document No. 15-12.) The record reveals that although Petitioner has been appointed seven different attorneys since the remand of his *habeas* case, an omnibus hearing has not yet occurred. Respondent "acknowledges that since the SCAWV remanded Petitioner's state habeas petition . . ., the proceedings have taken an unusual amount of time." (Document No. 15, p. 10.) Respondent, therefore, "concedes that the length of time Petitioner's state habeas petition has been pending since its remand on November 30, 2009, is sufficient to satisfy the first *Plymail* factor." (Id.) Based on the foregoing, the undersigned finds that the alleged delay in Petitioner's State *habeas*

25

proceedings is of the magnitude of delay that has been determined to be inordinate. Accordingly, the foregoing factor weighs in favor of excusing exhaustion.

### B.    Progress of State Proceedings:

Next, the undersigned will consider the progress of Petitioner's *habeas* proceedings in State court. See Lee v. Stickman, 357 F.3d 338, 342 (3rd Cir. 2004)(When considering the length of the delay, the court should also consider "the degree of progress made in state court.") Even if a case is progressing slowly in state court, a federal court should not excuse exhaustion if the state case is proceeding normally. Burkett v. Cunningham, 826 F.2d 1208, 1218 (3rd Cir. 1987). In the instant case, Petitioner complains that appointed *habeas* counsel has not filed Petitioner's Amended *habeas* Petition nor has the Circuit Court conducted an omnibus hearing since the remand from the SCAWV. The record reveals that the Circuit Court appointed Mr. Long as *habeas* counsel on March 17, 2010, and Petitioner filed his *pro se* Motion for Appointment of Co-Counsel on May 21, 2012, setting forth his dissatisfaction with Mr. Long. (Document Nos. 15-13 and 15-14.) On June 27, 2012, the Circuit Court relieved Mr. Long as counsel and appointed Ms. White as *habeas* counsel. (Document No. 15-15.) Petitioner filed a Motion on February 20, 2013, requesting that Ms. White be removed as counsel. (Document No. 15-20.) By Order filed on February 26, 2013, the Circuit Court relieved Ms. White as counsel and appointed Mr. Forbes as *habeas* counsel. (Document No. 15-22.) On March 29, 2013, Petitioner requested the appointment of new counsel." (Document No. 15-23.) By Order entered on June 11, 2013, the Circuit Court relieved Mr. Forbes from representing Petitioner and appointed Mr. Smith. (Document No. 15-25.) In Motions filed October 28, 2013 and January 28, 2014, Petitioner expressed his dissatisfaction with Mr. Smith and requested the appointment of new counsel. (Document Nos. 15-26 and 15-27.) On March 24,

2014, the Circuit Court relieved Mr. Smith as counsel and appointed Mr. Doneghy. (Document No. 15-28.) On March 16, 2017, Petitioner requested that Mr. Doneghy be replaced or co-counsel to be appointed. (Document No. 15-29.) By Order filed on April 13, 2017, the Circuit Court relieved Mr. Doneghy and appointed Mr. Rosinsky as *habeas* counsel. (Document No. 15-30.) On March 20, 2018 and April 9, 2018, Petitioner complained of his dissatisfaction with Mr. Rosinsky. (Document Nos. 15-31 and 15-32.) The Circuit Court conducted a hearing on the issue, and after initially indicating that the Court would not appoint new counsel, the Court reconsidered after Mr. Rosinsky indicated that he could "sure use the lighten [case]load" if Petitioner did not "want" him. (Document No. 15-33.) By Order filed on June 4, 2018, the Circuit Court relieved Mr. Rosinky from representing Petitioner and appointed Mr. Bullman as *habeas* counsel. (Document No. 15-34.) On January 8, 2020, the Circuit Court conducted a Status Hearing and set forth a Scheduling Order. (Document Nos. 37, 39, and 40.) Specifically, the Circuit Court directed that within 60 days Mr. Bullman file Petitioner's Amended Petition and Petitioner file any *pro se* supplemental brief, and the State would have 60 days thereafter to file its Response. (Id.)

Based upon the foregoing, the undersigned cannot find that Petitioner's State *habeas* proceeding has lain dormant in the Circuit Court. Despite the lack of the filing of an Amended Petition by appointed counsel, the record reveals that the Circuit Court has repeatedly appointed Petitioner new counsel upon his expression of dissatisfaction with appointed counsel. The Circuit Court has now appointed Petitioner seven different attorneys. Further, the Circuit Court has acted with reasonable promptness in appointing new counsel following Petitioner's expression of dissatisfaction. Thus, the foregoing factor does not weigh decisively in favor of excusing exhaustion.

27

### C.    Responsibility for Delay:

Finally, the undersigned will consider who is responsible for the alleged delay. The undersigned finds that the majority of the delay in this case is the result of the Circuit Court failing to manage its docket. Although the Circuit Court usually acted with reasonable promptness in addressing Petitioner's motions for appointment of new counsel, the Circuit Court continuously failed to enter a scheduling order or conduct status conferences. Despite the numerous appointments of new counsel, six of the appointed attorneys never filed an amended *habeas* petition on behalf of Petitioner. Delays caused by court-appointed counsel may be attributed to the State where "the petitioner has not personally caused the delays nor condoned them." Gardner v. Plumley, 2013 WL 5999041, * 6 (S.D.W.Va. Nov. 12, 2013)(J. Goodwin)(citations omitted)("The rule excusing exhaustion in cases of inordinate delay is not limited to delays caused by judge, court officials, and prosecutors; it also has been applied to delays caused by court-appointed counsel, which may be 'attributable to the state' as long as 'the petitioner has not personally caused the delays nor condoned them."); also see Turner v. Bagley, 401 F.3d 718, 726 (6th Cir. 2005)("failures of court-appointed counsel and delays by the court are attributable to the state"). It seems apparent to this Court that the entry of a scheduling order by the Circuit Court would have resulted in the Circuit Court actively managing its docket thereby ensuring that Petitioner's State *habeas* action moved forward with reasonable speed. Next, the undersigned acknowledges that Petitioner's numerous requests for appointment of new counsel resulted in some delay. It is reasonable that some delay would occur as a result of the appointment of new counsel. Each replacement attorney needs time to obtain and review the file and become familiar with the facts and applicable law. Furthermore, the record reveals long periods of time where there were no filings by Petitioner or

his counsel. Although the Circuit Court is ultimately responsible for managing its docket, a petitioner cannot sit on his rights and then expect to benefit from his lack of diligence. The Circuit Court had a history of acting with reasonable promptness in addressing motions filed by Petitioner, yet Petitioner often waited years before complaining that he was dissatisfied with counsel. If Petitioner was either dissatisfied with counsel, or did not consent to the delay, Petitioner should have immediately notified the Circuit Court of such and requested action by the Circuit Court. In consideration of the delay occurring up until the filing of Petitioner's federal petition, the undersigned finds that the majority of the delay is attributable to the State.

Since the initiation of the instant proceeding, however, it appears that Petitioner has attributed to the delay by refusing to communicate with State *habeas* counsel. Petitioner appears to justify such by stating he was given this advice of his prison "legal team," and his desire to proceed with his *habeas* action in this Court, instead of State court. The record reveals that the Circuit Court conducted a Status Hearing on January 8, 2020. It was revealed during the hearing that Petitioner had been unresponsive to communications by Mr. Bullman after the filing of his federal *habeas* action and Petitioner had not approved for filing the proposed Amended *Habeas* Petition prepared by Mr. Bullman. Petitioner and Mr. Bullman revealed they disagreed as to what grounds should be asserted in Petitioner's Amended Petition. The Circuit Court, therefore, ordered Mr. Bullman to again confer with Petitioner and to file an Amended Petition within 60 days. After Petitioner expressed doubts that the Amended Petition would include all the grounds Petitioner wished to assert, the State agreed to allow Petitioner to file a *pro se* Brief simultaneously with the Amended Petition filed by counsel. The Circuit Court directed that the State would have 60 days to respond to the Amended Petition and Petitioner's *pro se* Brief. Thus, the record reveals that the

29

Circuit Court has now set forth deadlines for the filing of Petitioner's Amended Petition, Petitioner's *pro se* Brief, and the State's Response. Accordingly, Petitioner's State *habeas* proceedings have clearly been re-activated.

Although the above delay is concerning, the record is clear that Petitioner's State proceedings are now moving forward. Even after inordinate delay, case law indicates that the federal courts should "stay its hand" when there is reliable evidence that the state action has been reactivated.[7] See Monegain v. Carolton, 576 Fed.Appx. 598, 602 (7th Cir. 2014)("[B]ecause the delay has come to a close, the comity concerns underlying the exhaustion requirement compel the federal courts to allow the state litigation to run its course.")(quotations omitted); Slater v. Chatman, 147 Fed.Appx. 959, 960 (11th Cir. 2005)(Although there was a 14-month delay in appointing counsel, the court found no "absence of available State corrective process" where the state court process was now moving forward); Walker v. Vaughn, 53 F.3d 609, 615 (3rd Cir. 1995)("a federal court should 'stay its hand' if there is evidence that a state court action is proceeding normally or has been 'reactivate.'"); Seemiller v. Wyrick, 663 F.2d 805, 807 (8th Cir. 1981)(refusing to excuse exhaustion for past delay when there was "no reason to believe that the state court will continue to delay"); Horrell v. Downey, 2018 WL 8899717, * 4 (C.D.Ill. Oct. 16, 2018)("only an ongoing delay warrants excusing the exhaustion requirement"); Chamberlain v. Lamas, 2013 WL 4787349 (E.D.Pa. Sept. 9, 2013)(refusing to excuse exhaustion where petitioner

---

[7] In *Peterson v. Ames*, Case No. 3:19-cv-00126, Judge Eifert entered a Proposed Finding and Recommendation that Respondent's Motion to Dismiss be granted because "the delay justifying an excuse of exhaustion must be **ongoing**" and Petitioner's state proceeding had been reactivated. *Peterson v. Ames*, Case No. 3:19-cv-0126, Document No. 33.) United States District Judge Robert C. Chambers stayed consideration of Respondent's Motion to Dismiss, and Judge Eifert's PF&R, pending the occurrence of the omnibus hearing scheduled for March 26, 2020. *Id.*, Document No. 43.

shared responsibility for the delay and the state court had taken an active role in seeing that the state *habeas* action proceeds expeditiously as possible); Melvin v. Harlow, 2011 WL 1344591, *8 (M.D.Pa. March 16, 2011)(where recent activity had moved expeditiously, past delays totally 14 years did not excuse exhaustion). Under the circumstances where a petitioner's state proceedings are now reactivated, the "comity concerns underlying the exhaustion requirement compel the federal courts to allow the state litigation to run its course." Vreeland v. Davis, 543 Fed.Appx. 739, 442 (10th Cir. 2013).

The majority of the delays in the Petitioner's State *habeas* proceedings appear to be the result of the Circuit Court's failure to enter a Scheduling Order, and partly due to Petitioner's disagreement or lack of cooperation with appointed counsel. The Circuit Court has now directed that appointed counsel again meet with Petitioner to discuss the proposed Amended Petition, and to the extent the parties continue to disagree, appointed counsel has been directed to file the Amended Petition and Petitioner may supplement such with his *pro se* Brief. The Circuit Court further set forth deadlines for the filing of the Amended Petition, Petitioner's *pro se* Brief, and the State's Response. Thus, there is no reason to believe the delay that occurred in the above case will continue. The above action taken by the Circuit Court should result in Petitioner's State *habeas* proceeding moving forward with reasonable speed. To the extent there is future delay, Petitioner has access to the State remedy of filing a petition for writ of mandamus with the SCAWV. A petition for writ of mandamus filed with the SCAWV would have been an available, and appropriate remedy, had Petitioner choose to pursue such. It does not appear, however, that Petitioner sought such relief prior to initiating this action. If Petitioner's State remedies are

ineffective, Petitioner may again seek relief with this Court.[8] For the reasons stated above, the undersigned respectfully recommends that the District Court find that Petitioner's State remedies have not been clearly rendered futile or ineffective, and Petitioner be required to exhaust his State court remedies.

2.    **Stay and Abeyance:**

In Rhines, the Supreme Court determined that when a State prisoner presents a mixed petition under § 2254, that is a petition containing claims that are both exhausted and unexhausted, the district Court may (1) dismiss the petition in its entirety; (2) order a stay and abeyance while the petitioner exhausts his claims in State Court; or (3) allow the petitioner to remove the unexhausted claim claims and proceed with the exhausted claims. Rhines v. Weber, 544 U.S. 269, 275-77, 125 S.Ct. 1528, 161 L.E.2d 440 (2005). The Supreme Court, however, cautioned that a "[s]tay and abeyance, if employed too frequently, has the potential to undermine" the twin purposes of the total exhaustion requirement and the limitation period. Id., 544 U.S. at 277, 125 S.Ct. at 1534. Specifically, the Supreme Court explained as follows:

> Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings. It also undermines AEDPA's goal of streamlining federal habeas proceedings by decreasing a petitioner's incentive to exhaust all his claims in state court prior to filing his federal petition.

Id., 544 U.S. at 277, 125 S.Ct. at 1535. Thus, a "stay and abeyance is only appropriate when the

---

[8] The undersigned notes that filing a petition for writ of *habeas corpus* with the SCAWV under its original jurisdiction is an available state remedy. West Virginia Code 53-4a-1(a) gives circuit courts and the Supreme Court of Appeals concurrent jurisdiction over *habeas corpus* petitions. There is no allegation or indication that Petitioner sought to exhaust his claims by filing an original jurisdiction *habeas* petition. Additionally, there is no allegation or indication of delay by the SCAWV.

district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." Id. (noting that "if a district court dismisses a mixed petition close to the end of the 1-year period, the petitioner's chances of exhausting his claims in state court and refiling his petition in federal court before the limitations period runs are slim."); also see Demere v. Ballard, 2013 WL 5352950 (N.D.W.Va. Sept. 24, 2013)("this procedure is only appropriate where an outright dismissal could jeopardize the timeliness of a petitioner's collateral attack in federal court").

Applying the Rhines standard to the facts of the instant case, the undersigned finds that a stay and abeyance is not warranted. The undersigned finds that the record does not support such a timeliness concern regarding the filing of Petitioner's Section 2254 Petition. Section 2244(d)(1)(A) provides that a Section 2254 *habeas* petition must be filed within one year after "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[9] The Circuit Court of Kanawha

---

[9] Title 28, United States Code, Section 2244(d)(1) provides as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

County resentenced Petitioner on December 10, 2008, for the purpose of reinstating his appeal rights. Petitioner's resentencing reset the time frame in which Petitioner's conviction was rendered "final" under AEDPA. See Harper v. Ballard, 2013 WL 285412, *4 - 6 (S.D.W.Va. Jan. 24, 2013)(J. Chambers)(finding Petitioner's resentencing restarted the clock for purposes of AEDPA's one-year limitation period); Horn v. Ballard, 2009 WL 914879, * 2 (S.D.W.Va. March 31, 2009)(J. Faber)(finding that petitioner's Section 2254 petition was timely based upon the reinstatement of petitioner's direct appeal rights by means of resentencing). Petitioner's direct appeal was denied by the SCAWV on September 25, 2008. Petitioner did not file a Petition for Writ of Certiorari in the United States Supreme Court, and therefore his conviction became final under 28 U.S.C. § 2244(d)(1)(A) on December 26, 2008[10] (90 days after the SCAWV denied his Petition for Appeal of his conviction and sentence). See Harris v. Hutchinson, 209 F.3d 325, 328 (4th Cir. 2000). Thus, pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, the one-year statute of limitation began running on December 27, 2008. The statute of limitations ran until March 17, 2009, when Petitioner filed his State *habeas* petition with the Circuit Court of Kanawha County. The Court notes that Petitioner's State *habeas* petition is currently pending before the Circuit Court. Thus, the one-year statute of limitation is currently tolled by Petitioner's State *habeas* proceeding. Upon the conclusion of Petitioner's State *habeas* proceeding, Petitioner will have approximately 284 days in which to file a Section 2254 Petition in federal court.[11] Accordingly, the undersigned finds

---

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

[10]  December 25th is a holiday, and thus, was not considered for the above calculation.

[11]  Petitioner is hereby **NOTIFIED** that the calculations of the statute of limitations set forth in this Proposed Finding and Recommendation are not conclusively correct. It is Petitioner's responsibility to file his petition correctly and timely.

34

that dismissal will not jeopardize the timeliness of Petitioner's Section 2254 Petition, and he cannot at this time demonstrate good cause for his failure to present his claims to the State Courts prior to seeking federal *habeas* relief. Accordingly, the undersigned recommends that Respondent's request for dismissal (Document No. 15) be granted and Petitioner's Petition must be dismissed without prejudice.

## PROPOSAL AND RECOMMENDATION

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Respondent's request for dismissal (Document No. 15), **DENY** Petitioner's "Application for Federal Intervention and Exhaustion of State Remedies to be Mandated Ineffective so Petitioner may Proceed by 28 U.S.C. § 2254" (Document Nos. 2 and 6), **DISMISS** without prejudice Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody (Document No. 8), and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge John T. Copenhaver, Jr. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same Petitioner, who is acting *pro se*, and to counsel of record.

Dated: March 10, 2020.

Omar J. Aboulhosn
United States Magistrate Judge